*E-Filed 7/29/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>   v.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>   Defendant.<br>_____/ | No. C 10-03009 RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff American Guarantee and Liability Insurance Company (American) brings this contribution action seeking reimbursement from defendant Lexington Insurance Company (Lexington) for sums paid to settle claims arising out of an accident at a construction site. American defended the general contractor BBI Construction (BBI) and paid the settlement. According to American, Lexington had a duty to defend and indemnify BBI under an insurance policy issued by it to the subcontractor RCM Fire Protection (RCM), whose employee was injured. American moves for partial summary judgment seeking a declaration that Lexington owed a primary duty to defend BBI, leaving issues related to money damages for a later date. Lexington seeks summary judgment on reverse grounds, *i.e.*, that no insurance coverage existed and/or that no duty to defend was

triggered. For the reasons stated below, Lexington's motion for summary judgment is granted and American's motion for partial summary judgment is denied.

## II.  BACKGROUND

BBI was the general contractor on a project to renovate the Veterans Memorial Building in Pleasanton, California. It is the named insured of a commercial general liability insurance policy issued by American. RCM was a subcontractor on the project that was engaged by BBI to install a fire sprinkler system. RCM is the named insured of an insurance policy issued by Lexington. The Lexington policy extended insurance coverage to any additional insureds that RCM was required by written contract to name. The additional insured endorsement modifies the commercial general liability coverage section and provides the following blanket protection:

> Blanket- Where required by written contract. It is further agreed that such insurance as is afforded by this policy for the benefit of the additional insured shall be primary insurance, but only with respect to claims, loss or liability arising out of the named insured's operations and any other insurance maintained by the additional insured shall be non-contributing.

Exh. D to Quintero Dec. in Support of Def. MSJ (Exh. D), at 69. Under the policy, Lexington generally does not extend coverage for bodily injury or property damage for which RCM becomes obligated to pay based on assumption of liability in a contract or agreement. *Id.* at 13. This exclusion does not apply if RCM assumes the liability as part of an "insured contract," provided that the bodily injury or property damage "occurs subsequent to the execution of the contract or agreement." *Id.* As defined in the policy, an insured contract includes: "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party for 'bodily injury' or 'property damage' to a third person or organization." *Id.* at 23.

As the general contractor, BBI issued an invitation to bid to RCM dated May 5, 2005. Exh. 2 to Chan Dec. in Support of Pl. MSJ. The invitation included a one paragraph description of the overall project, which indicated that planned renovations to the building included a new fire sprinkler system. On May 12, 2006, RCM provided a quotation for the fire sprinklers that outlined the proposed work and listed a price. Exh. 3 to Chan Dec. in Support of Pl. MSJ. On August 7, 2006, RCM submitted a revised quotation. Exh. 4 to Chan Dec. in Support of Pl. MSJ. BBI then sent a letter of intent dated August 10, 2006, which states: "This letter is to notify you that BBI

Construction intends to contract with you on the Pleasanton's Veteran Memorial Building project. We do not yet have formal Notice to Proceed from the Owner, but we have been asked to commence with the submittal process." Exh. 1 to Chan Dec. in Support of Pl. MSJ (Exh. 1). The letter requests RCM to proceed with its submittals, shop drawings, and material and safety data sheets according to the plans and specifications. Exh. 1, at 1. It also informs RCM of the requirement that it submit documents regarding general liability insurance "naming BBI-Con, Inc. as the additional insured and include [sic] the following as job description: Pleasanton's Veteran Memorial Building." *Id.* The letter further states, "[p]lease sign below and return a copy of this letter to indicate your acceptance." RCM's president signed and dated the letter on August 10, 2006. *Id.* at 2.

BBI and RCM subsequently signed a document titled "standard form subcontract" listing Pleasanton Veterans Memorial Building as the "job name" and November 2, 2006 as the "subcontract date." Exh. 5 to Chan Dec. in Support of Pl. MSJ (Exh. 5), at 1. RCM signed that agreement on November 30, 2006 and BBI signed it on March 6, 2007. *Id.* at 1. The subcontract includes separate paragraphs addressing indemnification and insurance. The indemnification section requires RCM to indemnify BBI against claims "arising out of or in connection with [RCM's] operations." *Id.* at 3. The indemnity is to apply "regardless of any active and/or passive negligent act or omission" of BBI. *Id.* RCM, however, is not obligated to indemnify BBI for any claims "arising from the sole negligence or willful misconduct" of BBI or its agents. *Id.* The indemnity provision expressly provides that it is not limited by the insurance requirements in the agreement. *Id.* Section 14 provides that RCM shall carry at least one million dollars of insurance on its operations and the policy must include an endorsement for "Contractual Liability under this Agreement." *Id.* at 4. It also requires that RCM name BBI as an additional insured under its general liability policy. *Id.*

On November 8, 2006, after RCM's signing of the letter of intent, but before either party signed the subcontract, an RCM employee was injured at the Veterans Memorial work site. David Trahan had exited the building and was walking toward a security gate to take a lunch break when

he was hit in the head by lumber that fell off the building's roof. He had removed his hard hat before passing through the gate, in violation of the safety policies of both RCM and BBI.

In November 2007, Trahan filed a personal injury suit against BBI and later added the wood contractor, Timber Construction. BBI in turn tendered its claim for defense and indemnity in the Trahan action to Lexington, which denied the claim. Lexington, however, denied that it had a duty to defend or indemnify BBI. BBI filed cross-claims against RCM and Timber Construction, claiming that each violated express indemnities and committed breach of contract by failing to insure, defend, and indemnify it. Subsequently, BBI dismissed with prejudice its claims against RCM. Ultimately, Trahan, BBI, and Timber Construction entered into a settlement agreement. On August 8, 2010, American filed the present suit alleging that Lexington had the primary duty to defend BBI as an additional insured under RCM's policy.

## III.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must identify factual disputes that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Irrelevant or unnecessary factual disputes do not raise any genuine issue for trial. *Id.* If a reasonable jury could return a verdict in favor of the nonmoving party, then entry of summary judgment is precluded. *Id.*

## IV.  DISCUSSION

Under the insurance policy obtained by RCM, Lexington extends coverage to additional insureds "[w]here required by written contract." American argues that two separate documents satisfy this requirement and therefore bring BBI within the Lexington policy. The first is the subcontract. Near the top of that form document, the language reads, "This Agreement is made this

1  day between BBI-CON, Inc. dba BBI Construction (Contractor) and RCM Fire Protection
2  (Subcontractor)." Below this sentence, the document lists the companies' addresses, along with
3  spaces for signing and dating by their respective representatives. RCM's president signed the
4  document on November 30, 2006 and BBI's vice president of operations signed it on March 6,
5  2007. Nonetheless, American contends that the "subcontract date" of November 2, 2006 listed on
6  the first page reflects the date that BBI and RCM intended the contract to be effective.

7  In light of the express terms of the Lexington policy, the intent of the parties regarding the
8  effective date is irrelevant. Any potential coverage extended to BBI arises from the blanket
9  additional insured endorsement in that policy. That endorsement modifies the policy's commercial
10 general liability coverage. Under that part of the policy, the insurance covers bodily injury claims
11 for which RCM assumes liability in an "insured contract," but only where such injury occurs
12 "subsequent to the execution of the contract or agreement." In this case, the subcontract requires
13 RCM to maintain a minimum of one million dollars of insurance "with an endorsement for
14 contractual liability under this Agreement." Thus, it qualifies as an "insured contract" within the
15 meaning of the Lexington policy. The agreement, however, was not "executed" prior to the Trahan
16 accident on November 8, 2006.

17 As generally understood, a party "executes" a written contract when it signs the agreement.
18 In the strictest sense, the contract is executed when all parties to the agreement have signed it. *See*,
19 *e.g.*, *Nielsen Construction Co. v. International Iron Products*, 18 Cal. App. 4th 863, 869 (1993)
20 (interpreting an indemnity provision within California Labor Code section 3864 and declaring that
21 "a written agreement is 'executed' when all parties sign the agreement; only then is the written
22 agreement completed and all necessary formalities performed"). Here, there is no dispute that
23 neither party executed the subcontract until after Trahan's accident on November 8, 2006. Although
24 American refers to the date RCM executed the subcontract, it does not suggest that executing a
25 written contract means anything other than signing it: "Although the subcontract was not executed
26 until November 30, 2006, the contract was dated to take effect on November 2." Pl. Opp. To Def.
27 MSJ, 10:28-11:1. Even if, as American argues, the parties were in complete agreement that the
28 subcontract was effective as of November 2, Lexington has short-circuited any reliance on that date

by including an unambiguous requirement that the named insured and additional insured execute their contract prior to any covered injury. The factual determination of when the parties reached an agreement or intended any contract to be effective is immaterial. The date at which Lexington provides insurance based on an insured contract is when the contract is executed. As a result, Lexington had no duty to defend or indemnify BBI in the Trahan litigation based on the subcontract.

American further contends that the letter of intent, signed by RCM's president on August 10, 2006, represents an "initial contract" between BBI and RCM sufficient to satisfy the written contract requirement in the Lexington additional insured endorsement. The formation of a contract requires mutual assent. *See First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1065 (9th Cir. 2011) (citing *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 59 (1988)). "Where any of the terms are left for future determination or there is a manifest intention that the formal agreement is not to be complete until reduced to a formal writing to be executed, there is no binding contract until this is done." *Smissaert v. Chiodo*, 163 Cal. App. 2d 827, 830-831 (1958). In other words, an agreement to make a future agreement, by itself, is not a binding contract. *First Nat'l Mortg. Co.*, 631 F.3d at 1065 (citation omitted).

In the absence of ambiguity, whether a document represents the final contract or instead an agreement to agree is determined "by a construction of the instrument taken as a whole." *Beck v. Am. Health Group Internat.*, 211 Cal. App. 3d 1555, 1562 (1989). The outward, objective manifestation of the parties' intent to be bound governs the interpretation. *Id.* (citations omitted). When parties refer to a document as a "letter of intent," the general implication is that they intend the document "to be a nonbinding expression in contemplation of a future contract." *Rennick v. O.P.T.I.O.N. Care*, 77 F.3d 309, 315 (9th Cir. 1996). Despite the label, a letter of intent may be a contract, if its contents evidence that the parties intended to be bound by its terms. *Id.*

In this case, the purported contract is a letter from BBI's project manager to the president of RCM with the subject line: "LETTER OF INTENT, Pleasanton's Veteran Memorial Building." The first line explains that "BBI Construction intends to contract with you" on the project. BBI informs RCM that it does not have the formal approval from the building's owner, but it has been asked "to commence with the submittal process." Accordingly, BBI requests various documents from RCM

No. C 10-03009 RS
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
6

1  including proof of general liability insurance "naming BBI-Con, Inc. as the additional insured" for
2  the job described as Pleasanton's Veteran Memorial Building.  It also serves to identify members of
3  the "BBI Project team" and provides their contact information.  The letter ends, at the top of the
4  second page, with a request for RCM to sign and to return a copy "to indicate your acceptance."
5  RCM's president signed and dated the letter on August 10, 2006.

6        In American's view, BBI needed only to receive notice from the building's owner to proceed
7  with the project.  It therefore characterizes the letter of intent as an enforceable contract with a
8  condition precedent.  In support, it points to the bid process and states that "the invitation to bid
9  described the work to be done and other general project requirements."  In response, the bid
10 provided by RCM "specified the price for which [it] would perform the work."  Thus, by signing the
11 letter, American contends that RCM signified acceptance of "the offer to perform the work" and
12 also "agreed in writing" to name BBI as an additional insured to its general liability insurance.

13       In viewing the letter of intent as a whole, however, there is no objective manifestation that
14 the parties intended to be bound by its terms.  The letter is sent from BBI's project manager to
15 "notify" RCM that the company "intends to contract."  Thus, the document is not just labeled "letter
16 of intent;" it also contains additional language expressly indicating a future intent to contract.
17 Furthermore, the complete lack of the essential terms of a contract also provides objective evidence
18 that the letter itself was not intended by the parties to constitute a binding contract.  Although the
19 letter refers to the "Pleasanton's Veteran Memorial Building" project, it does not mention RCM's
20 bid or otherwise incorporate any terms from it.  Even if RCM's August 7, 2006 revised quotation
21 were incorporated, neither the bid nor the letter of intent discuss the time for performance of the
22 subcontract.  While the letter informs RCM that it must submit documents regarding general
23 liability insurance that name BBI as an additional insured, no description of the amount of insurance
24 or the scope of any indemnity is provided.  Instead of outlining the essential terms of an agreement,
25 the letter primarily requests further submittals from RCM within fifteen days of "this notice."

26       At oral argument on these motions, American suggested that RCM could readily enforce a
27 contract to be paid for the work performed at the Veterans Memorial based on the letter of intent and
28 performance of the work alone.  As even American describes the letter as "memorializing" the

initial contract, it apparently recognizes that the document itself does not suffice as a written contract. Lexington expressly agreed to provide additional insured coverage, not when RCM formed a contract, but when it executed a written contract. Thus, the issue is not whether or when the parties reached an agreement that RCM would add BBI as an additional insured, but the narrower question of when any agreement was reduced to writing. In this case, the letter of intent simply does not constitute a written contract.

In summary, BBI and RCM neither executed their written subcontract prior to Trahan's accident nor entered into a written contract by virtue of the letter of intent. Based on express provisions in RCM's policy with Lexington, BBI was not covered as an additional insured at the time Trahan was injured.[1] Therefore, Lexington had no duty to defend or indemnify BBI in the Trahan litigation and its motion for summary judgment is granted.

## V.  CONCLUSION

For the reasons set forth above, Lexington's motion for summary judgment on the grounds that it did not owe a duty to defend or indemnify BBI in the Trahan litigation is granted and American's motion for partial summary judgment is denied.

IT IS SO ORDERED.

Dated: 7/29/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[1] In its motion, Lexington raised additional grounds for summary judgment including: (1) that Trahan's accident did not "arise out of" RCM's work as required in its policy; (2) that the policy should be construed in light of the indemnity provision in the subcontract as excluding liability based on BBI's "sole negligence;" (3) that because BBI had dismissed its claims against RCM in the Trahan litigation, Lexington's present claims are barred; and (4) that an entity other than American, namely Zurich American Insurance Company, funded the settlement with Trahan. Based on the conclusion that no written contract was executed prior to the Trahan accident, these additional arguments need not be reached.